Katherine STEWART, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Aug. 19, 1981.

Decided Oct. 27, 1981.

L. Vincent Ramunno (argued), Wilmington, for defendant below, appellant.

J. Patrick Hurley, Jr. (argued), Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., QUILLEN and HORSEY, JJ.

**HERRMANN, Chief Justice:**

In this appeal we are asked to reverse defendant's conviction under 11 *Del.C.* § 512, Conspiracy Second Degree [1] because (1) the conviction is inconsistent with the jury's finding of not guilty on a charge of Delivery of a Non-Narcotic Schedule II Controlled Substance under 16 *Del.C.* § 4752,[2] in that the overt act required as an element of the conspiracy was the delivery; (2) the Trial Court erred in admitting certain evidence, in making prejudicial comments in front of the jury, and in failing to advise counsel in advance of his proposed jury instruction; (3) the Trial Court's instruction on entrapment was inadequate; (4) defendant was denied the right to cross-examination; and (5) the evidence was insufficient to prove beyond a reasonable doubt the crime of Conspiracy.

**I.**

The defendant Katherine Stewart met an undercover detective of the Delaware State Police and an informant at a store in New Castle, Delaware. A conversation ensued during which the detective inquired of the defendant about the possibility of purchasing methamphetamine. Quality and price were also discussed. Defendant, herself, testified that she told the police detective she could introduce him to someone who would sell him drugs, that person being her sister-in-law, Deborah Stewart.

It was agreed that the detective and the informant would follow the defendant to a house where the three individuals met Deborah Stewart. After a brief discussion be-

---

1. 11 *Del.C.* § 512 reads in pertinent part:

"§ 512. Conspiracy in the second degree; class E felony.

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

    *    *    *    *    *

"(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, and he or another person with whom he conspired commits an overt act in pursuance of the conspiracy."

2. 16 *Del.C.* § 4752 reads:

"§ 4752. Prohibited acts B; penalties.

"Except as authorized by this chapter, any person who manufacturers, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I, II, III, IV or V which is not a narcotic drug is guilty of a felony and upon conviction shall be fined not less than $1,000 nor more than $10,000 and imprisoned not more than 10 years."

tween all the parties, the sum of $65 was paid by the detective to the defendant, according to the detective's testimony,[3] and the detective indicated his preference as to the color drug he preferred.

The defendant and her sister-in-law then drove away in a car. The detective and the informant remained behind at the house. After about 15 minutes, Deborah Stewart returned and gave the drugs to the police detective.

Both defendant and Deborah Stewart were indicted on two counts: (1) Delivery of a Non-Narcotic Schedule II Controlled Substance under 16 *Del.C.* § 4752; and (2) Conspiracy Second Degree to Deliver under 11 *Del.C.* § 512. Deborah Stewart was permitted to plead guilty to a lesser charge of possession. In testifying for the State, she admitted acquiring the drugs from an acquaintance at a nearby motel. She further testified that before obtaining the drugs, she drove the defendant to the home of the latter's boyfriend and left her there.

## II.

The defendant's pivotal argument is that since she was acquitted of the Delivery charge, and since the Delivery was the overt act alleged to have been committed as part of the conspiracy, she cannot be found guilty of the conspiracy since a necessary element of the crime, namely the commission of an overt act, has been negated by her acquittal on the delivery charge. Stated another way, defendant argues that since one of the elements of the conspiracy Statute is the commission of an overt act, her acquittal on a count of committing the overt act renders her conviction on the conspiracy count reversibly inconsistent, the elements of the conspiracy not having been established by the evidence.

**3.** The defendant denied that she received the money. According to the testimony of Deborah Stewart, the money was paid to her, not to the defendant.

**4.** 11 *Del.C.* § 271 reads in pertinent part:
"§ 271. Liability for the conduct of another— Generally.
"A person is guilty of an offense committed by another person when:

The defendant relies on *Johnson v. State*, Del.Supr., 409 A.2d 1043 (1979), and cites that case for the proposition that inconsistent verdicts are reversible in this State. Further, citing *Wilson v. State*, Del.Supr., 305 A.2d 312 (1973), the defendant argues that not only is the verdict inconsistent, but it is a compromise. Compromise verdicts cannot stand, the defendant asserts, because they are the result of "the surrender by some jurors of their conscientious convictions in return for some like surrender by the [other jurors]."

Defendant seeks further support for her position by pointing out that "When, having been instructed on accomplice liability under 11 *Del.C.* § 271,[4] the jury found [defendant] not guilty of the substantive offense, . . . [guilty as to] the conspiracy was negated." In other words, defendant asserts that since the jury rejected the accomplice liability theory as to delivery, it could not find accomplice liability as to the commission of the overt act element of the conspiracy. We disagree.

### A.

While the jury's rejection of the defendant's guilt as to the offense of drug delivery, based on accomplice liability, may have been irrational under the evidence and illogical in view of the conspiracy verdict, the two verdicts were not fatally inconsistent as a matter of law.

Conspiracy, as the Statute defines it, requires an agreement between two or more persons "to promote or facilitate the commission of a felony." Implicit in the Statute is that "[i]ntention to promote or facilitate commission of a crime is a material element of conspiracy under [11 *Del.C.*

"* * *
"(2) Intending to promote or facilitate the commission of the offense he:
"* * *
"b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it;"

§ 512]." *Delaware Criminal Code Commentary* § 511, p. 143 (1973). When the common law crime was replaced by the present Code, the additional element of an overt act pursuant to the conspiracy was included. Compare *Wilson v. State*, Del.Supr., 305 A.2d 312 (1973).

" 'An important change in the former law is the requirement that an overt act be committed in pursuance of the conspiracy. * * * Such a requirement is the best possible proof of a settled intention to promote or facilitate commission of the crime. It need not be an act which would amount to a 'substantial step' * * *, but may be any act in pursuance of or tending toward the accomplishment of the conspiratorial purpose. *It is sufficient that any of the conspirators has committed an overt act.*' (Emphasis added)

"*Delaware Criminal Code Commentary* § 511, p. 143 (1973)." *Weick v. State*, Del.Supr., 420 A.2d 159, 164–65 (1980).

It is the last sentence of the above quoted commentary that is the key to this case: The overt act need not have been committed by the defendant; it is sufficient that the delivery, the overt act, be committed by someone else, i. e., a co-conspirator. The Conspiracy Statute has its own "accomplice liability" language; for it to be invoked, there need be no reference to 11 *Del.C.* § 271, the "general accomplice" liability provision.

■ Since the Conspiracy Statute is thus self-supporting as to accomplice liability,[5] there is no merit in the defendant's position that the jury's rejection of § 271 accomplice liability means there must likewise be a rejection of accomplice liability as to the commission of the overt act in a conspiracy.

**B.**

Furthermore, defendant's reliance on *Johnson v. State, supra,* is misplaced; that case is clearly distinguishable. In *Johnson,* the defendant was indicted for Burglary Third Degree, 11 *Del.C.* § 824 and Conspiracy Second Degree, 11 *Del.C.* § 512. The conspiracy count stated:

"RAY THOMAS JOHNSON, on or about the 28th day of February, 1978, in the County of New Castle, State of Delaware, when intending to promote the commission of a felony, did agree with two unknown males, to engage in conduct constituting the felony of Burglary Third Degree and did commit an overt act in furtherance of said conspiracy, to wit: Burglary Third Degree as set forth in Count I of this Indictment which is incorporated herein by reference."

Therein lies the distinguishing feature between *Johnson* and the instant case. The overt act of burglary in *Johnson* was alleged to have been committed only by Johnson, himself. Since Johnson alone was alleged to have committed the overt act, and since he was acquitted of that offense, he could not be convicted of conspiracy in the absence of that essential element.

■ In the present case, on the other hand, it was alleged in the conspiracy count that the overt act, delivery, was committed by the defendant and a co-conspirator.[6] The jury was apparently satisfied beyond a reasonable doubt that the defendant engaged in conduct sufficient to convict her of the conspiracy; but that since she did not personally engage in the overt act, she could not be convicted of the substantive offense. Any further speculation into the reason for the verdict as the jury rendered

---

**5.** We note that the record indicates that the 11 *Del.C.* § 271 accomplice liability charge given by the Trial Court was, in fact, limited to the substantive offense of delivery.

**6.** Specifically, the present indictment states:
"KATHERINE STEWART and DEBORAH STEWART, on or about the 17th day of May, 1979, in the County of New Castle, State of Delaware, when intending to facilitate the commission of a felony, did conspire with each other to engage in conduct constituting the felony of Delivery of a Non-Narcotic Schedule II Controlled Substance (Methamphetamine) and did commit an overt act in furtherance of said conspiracy, Delivery of a Non-Narcotic Schedule II Controlled Substance (Methamphetamine) as set forth in Count I of this Indictment and included herein by reference."

it would be inappropriate and "useless." *Wilson v. State*, 305 A.2d at 317.

\* \* \*

We hold, therefore, that the defendant's acquittal on delivery and conviction on conspiracy are not fatally inconsistent as a matter of law.

### III.

The defendant also seeks reversal of her conviction on several other grounds which merit no more than summary disposition:

### A.

█ We find unsubstantiated by the record the argument that the Trial Court, in its entrapment instruction, failed to make it clear to the jury that the defense was applicable to both the delivery and the conspiracy charge. In giving the entrapment charge, the Trial Court clearly spoke in terms of "offenses" in the plural, as opposed to the singular. Compare *Kreisher v. State*, Del.Supr., 319 A.2d 31, 33 (1974).

### B.

█ The defendant argues that it was reversible error to admit into evidence the envelope which had contained the drugs because marked on the outside were the words "Field Test positive for methamphetamine." We disagree. At most it was merely cumulative of the testimony of the forensic chemist as to the results of the test. See *Whalen v. State*, Del.Supr., 434 A.2d 1346 (1980).

### C.

█ In prefatory statements to the jury designed to explain the purpose of closing arguments, the Trial Court said, "[an attorney] *may not attribute the crime to another person* unless such an inference is warranted." (emphasis added). Defendant argues that the statement undercut the thrust of the defense in that it restricted the summation defendant's counsel could give and, therefore, deprived defendant of the right to effective counsel.

We find no merit in the argument. The defendant would have us look only to the emphasized portion of the statement. The defendant takes that portion out of context; the remainder of the sentence must also be given due consideration. In view of the confession of Deborah Stewart which was in evidence, we find no error in the Trial Court's statement; the inference referred to was warranted by the evidence.

### D.

█As to the contention that the Trial Court erred in failing to advise counsel in advance of the context of the charge: the record fails to reveal a request by counsel for a preview of the jury instructions. Accordingly, we find no error in this regard. *Lewis v. State*, Del.Supr., 416 A.2d 208 (1980).

### E.

█ The defendant also argues that the Trial Court erred in not charging the jury as to the potential sentence to which defendant would be subject if convicted on the delivery charge. The defendant raises this issue in support of her position that the jury should know the full consequences of any decision it makes. Since the defendant was acquitted of the delivery charge, there was no prejudice. In any event, comment to the jury regarding potential sentence would be error. *Hand v. State*, Del.Supr., 354 A.2d 140 (1976).

### F.

The defendant alleges prejudice based on a statement attributed to the prosecutor to the effect that he believed that the detective was telling the truth. Since no such statement appears in the record before us, the question is not reviewable.

### G.

█ Defendant claims that she was also denied a fair trial because the detective, "rehashed" the facts and his testimony during lunch with the prosecutor. As to this issue, it is important to note that the detec-

tive was the chief investigating officer. As such, he was an "important trial aid for the prosecuting attorney." *Grace v. State*, Del. Supr., 314 A.2d 169, 170 (1973). Without more, no error has been demonstrated in this connection.

### H.

Finally, there is the defendant's argument that the evidence as to the conspiracy was purely circumstantial and was insufficient to support the verdict. The test to be applied is "whether the evidence [be it direct or circumstantial], viewed in its entirety and including all reasonable inferences, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt." *Holden v. State*, Del.Supr., 305 A.2d 320, 322 (1973). That test has been amply met by the record in this case.

\* \* \*

Affirmed.